UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| EDWARD BUSTOS, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 10 CV 50120 |
| | ) | |
| v. | ) | Judge Frederick J. Kapala |
| | ) | |
| McHENRY COUNTY, KEITH NYGREN, | ) | P. Michael Mahoney |
| McHenry County Sheriff Deputies | ) | |
| NEIL PAGETT, JASON GROCHOWSKI, and | ) | |
| SCOTT LOYD, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MOTION TO DISMISS AND
MEMORANDUM OF LAW IN SUPPORT**

**NOW COME** Defendants, Neil Pagett, Jason Grochowski, and Scott Loyd, and McHenry County and its Sheriff, Keith Nygren, in his official capacity only, by and through their attorney, LOUIS A. BIANCHI, McHenry County State's Attorney, and his duly appointed Assistant, Donald B. Leist, and move this Honorable Court to dismiss Plaintiff's First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and in support thereof, state as follows:

**COUNT I SHOULD BE DISMISSED BASED ON FAILURE
TO ADEQUATELY PLEAD A CLAIM**

1. Plaintiff originally filed, pursuant to 42 U.S.C Section 1983, a five Count Complaint against all the above Defendants for allegedly violating his constitutional rights.

2. However, in each of the Counts directed at the individual Defendants, Pagett, Grochiowski, and Loyd, Plaintiff referred to them generically as "Defendant officers" without specifying which of the Defendants were actually being implicated in each specific Count.

1

3. The Defendants thereafter filed a Motion, pursuant to Federal Rule of Civil Procedure 12(e), for a more definite statement on the basis that it was impossible for each Defendant to respond to the Complaint unless Plaintiff put each Defendant on notice of what they were was accused of doing and how they violated Plaintiff's constitutional rights.

4. The Defendants argued that it was especially necessary in the instant case, because Plaintiff alleged that all "Defendant officers" "falsely arrested/imprisoned" Plaintiff (Count I), while all "Defendant officers" also "failed to intervene" (Count II), in the false imprisonment. Defendants then argued that Plaintiff's Complaint did not put each on notice as to whether he falsely imprisoned Plaintiff or whether he failed to intervene in the false arrest/imprisonment by another officer.

5. Finally, the Defendants argued that if Plaintiff's Complaint were properly pled, Defendants would have numerous defenses which could be raised such as "qualified immunity", or other fact specific defenses which cannot be raised until the Complaint alleges which Defendant is alleged to have committed what act against the Plaintiff.

6. On July 22, 2010 this Honorable Court after noting that Rule 12(e) Motions should be "granted sparingly", granted Defendants' 12(e) Motion.

7. This Honorable Court granted the Motion citing Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009), because the "Plaintiff refers to the deputies throughout the complaint collectively; the Court cannot infer what misconduct each deputy is accused of doing."

8. Plaintiff subsequently filed an Amended Complaint; however, it fails to state a claim as it is implausible since it still alleges that all individual defendants committed all of the alleged constitutional violations.

9.      Apparently, Plaintiff believes that since he has dispensed with his "failure to intervene" Count, he has abided by this Honorable Court's Order and has now pled sufficiently.

10.     However, he still has not pled sufficiently nor complied with this Courts' Order, since he still pleads that all the individual Defendants did everything and it is at once implausible and conclusory.

11.     Plaintiff's First Amended Complaint is implausible on its face since it asks this Honorable Court to assume essentially that all the Defendants were tethered together during each aspect of the booking process, and that each saw, heard, knew and observed the exact same information as their Co-Defendants.

12.     To survive a 12(b)(6) motion to dismiss, a plaintiff must surpass two hurdles. First, the complaint must describe the claim in sufficient detail to give the defendant "fair notice" of what the claim is and "the grounds upon which it rests." Second, the complaint's allegations must *plausibly suggest* that the Plaintiff has a right to relief, "It is [no longer] enough for a complaint to *avoid foreclosing* possible bases for relief; it must actually *suggest* that the plaintiff has a right to relief by providing allegations that 'raise a right to relief above the speculative level.' Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct.1955, 2965 (2007).

13.     In addition, the U.S. Supreme Court's holding in Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009) delivers another lethal blow to Plaintiffs' Amended Complaint. In Iqbal, the Supreme Court held "Where a complaint pleads facts that are merely consistent with a defendants' liability, it stops short of the line between possibility and plausibility of entitlement to relief… "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal at 129 S.Ct 1949 (2009).

14. Plaintiff's Amended Complaint should be dismissed because it fails to satisfy <u>Twombly</u> and <u>Iqbal</u> since it does not make any factual assertions such as how each Defendant knew why Plaintiff was arrested, knew whether Plaintiff was born in Mexico, knew whether or not Plaintiff was a citizen, knew why Plaintiff had an arrest warrant or not, but merely relies on generic conclusions.

## COUNT I SHOULD BE DISMISSED BASED ON QUALIFIED IMMUNITY

1. Even assuming Plaintiff had pled sufficiently, the individual Defendants are entitled to "qualified immunity".

2. "Qualified Immunity" was specifically designed to avoid excessive disruption of government and to permit the resolution of many insubstantial claims. <u>Harlow v. Fitzgerald</u>, 457 U.S. 800 (1982).

3. Therefore in <u>Harlow</u>, the U.S. Supreme Court held that individual officers can only be held liable if they violate clearly established law that a reasonable officer should know.

4. Furthermore, it is well settled that qualified immunity should be determined at the earliest possible time so that Defendants will not be unnecessarily subjected to the burdens of the discovery process.

5. In the cause at bar, it is unclear whether Plaintiff is alleging a "false arrest" claim or "false imprisonment" claim.

6. It is also unclear from Plaintiff's First Amended Complaint who allegedly "falsely arrested" Plaintiff or "falsely imprisoned" Plaintiff, as well as who did the "false arresting" or "false imprisoning", and when the "false arrest" or "false imprisonment" occurred.

7. In any event, it is well settled that a "false arrest" or "false imprisonment" claim is analyzed under the Fourth Amendment which explicitly protects such rights. Bridewell vs. Eberle, 2010 WL 2921635 (N.D.IL 2010) relying on Albright v. Oliver, 510 U.S. 266 (1994).

8. When analyzing whether a police officer is entitled to "qualified immunity" in the context of a Fourth Amendment Claim, qualified immunity protects an officer even if he violates a Plaintiff's Fourth Amendment rights, if the reasonable officer would not know that his conduct is constitutionally impermissible. Anderson v. Creighton, 483 U.S. 635 (1987).

9. In the instant cause, assuming all of Plaintiff's allegations and admissions contained in his Complaint and First Amended Complaint are true, Plaintiff was only in custody at the McHenry County Jail for less than eleven and a half hours. (Plaintiff's Complaint Paragraphs 17 and 29, Plaintiff's First Amended Complaint Paragraph 16).

10. Any analysis of reasonableness under the Fourth Amendment is particularly sensitive to the duration of the arrest or detention of a plaintiff.

> "the shorter the detention, the less compelling is the evidence of the necessity for it that the authorities need to produce. This is the theory of the "Terry stop" and of much else in the Fourth Amendment law. Villanova v. Abrams, 972 F.2d 792, 796 (7th Cir. 1992) (citing Delaware v. Prouse, 440 U.S. 648, 663 (1979)); U.S. v. Martinez-Fuerte, 428 U.S. 543, 557-60 (1976); U.S. v. Chaidez, 919 F.2d 1193, 1197-98 (7th Dist.).

11. The United State's Supreme Court has held that a delay of less than 48 hours before a probable cause hearing does not necessarily trigger Fourth Amendment concerns. County of Riverside v. McLaughlin, 500 U.S. 44, 56 (1991). In addition, there are numerous cases analyzed under the Fourteenth Amendment concerning conditions of confinement wherein the Seventh Circuit has held that the "Conditions of imprisonment' do not reach even the threshold of constitutional concerns until a showing is mde of genuine privations and hardship over an extended period of time."

12. Furthermore, the Defendants' conduct is objectively reasonable under the circumstances presented in this case given that there was no ICE official "on-call" when Plaintiff was processed and "booked."

13. Furthermore, within fifteen minutes of an ICE official's availability, Plaintiff was released at 7:15 a.m. the very next morning, after he was arrested.

14. Therefore, the relevant inquiry is not whether the defendants should have known that there was a federal right, in the abstract, to a legally cognizable interest under the Fourth Amendment; but rather, whether it was clearly established in the Seventh Circuit that a delay of less than twelve hours while waiting for an ICE official to be available was unconstitutional.

15. When reviewing a qualified immunity defense, courts must conduct a two-step inquiry, i.e.: (1) whether, based on the facts taken in the light most favorable to the plaintiff, the official's conduct violated a constitutional right; and (2) whether that constitutional right was clearly established at the time of the violation. *Saucier v. Katz*, 533 U.S. 194, 200-201 (2001). Although *Saucier* held that this inquiry must be conducted sequentially, the Supreme Court very recently overruled *Saucier* in this respect and held that the inquiry need not be made in any particular order. *Pearson v. Callahan*, 172 L.Ed.2d 565, 129 S.Ct. 808 (2009). Thus it is within the courts' discretion to determine which question to ask first. If the answer to either question is no, however, the defendant is entitled to qualified immunity.

16. In the case at bar, the individual Defendants should be dismissed on qualified immunity grounds.

## COUNT II SHOULD BE DISMISSED SINCE THERE IS NO INDEPENDENT ACTION FOR A VIOLATION OF "SUBSTANTIVE DUE PROCESS" AVAILABLE TO PLAINTIFF

1. In Count II Plaintiff merely incorporates paragraphs 1 through 15 of Counts I and Counts II, and then alleges that this same conduct of all Defendants entitles Plaintiff to bring an action for "substantive due process".

2. It is well settled that there is no separate claim based on "substantive due process" clause of the 14th Amendment "with its scare and open-ended guideposts". Collins v. Harker Heights, 503 U.S. at 125, citing Albright v. Oliver, 510 U.S. 266, 275 (1994), when a specific Constitutional provision is applicable.

3. This well known principle first enunciated in Albright v. Oliver and iterated by the Seventh Circuit is McCann v. Mangicalerdi 337 F.3d 782 (7th Cir. 2003) and recently reiterated in Bridewell vs. Eberle, 2010 WL 2921635 (N.D. Ill) is that "the Supreme Court has made it clear that a substantive due process claim may not be maintained when a specific constitutional provision (here the Fourth Amendment) protects the right allegedly violated." McCann at 337 F.3d at 786 quoted by Bridewell at 2010 WL 2921635.

4. Therefore this Count fails to state a claim and it should be dismissed with prejudice.

## COUNT III SHOULD BE DISMISSED SINCE PLAINTIFF HAS INADEQUATELY PLED A "MONELL CLAIM"

1. In Count III, Plaintiff attempts to assert a "Monell Claim" against McHenry County Sheriff Keith Nygren.

2. However, Plaintiff's Count III is insufficient pursuant to Bell Atlantic v. Twombly, 550 U.S. 544 (2007) and Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009) and therefore fails to state a claim.

3. In <u>Iqbal</u>, the United State's Supreme Court was concerned about subjecting high-level supervisors to the "burdens of discovery" due to formulaic complaints.

4. Therefore, the Supreme Court, in <u>Iqbal</u>, relying on its own language in <u>Twombly</u>, held that allegations that governmental officials "knew of, condoned and willfully and malicious agreed to" or acted "as a matter of policy' or that the officials were "instrumental" or the principal architect' were nothing more than a "formulative recitation of the elements of a claim" and thus do not satisfy the plausibility required by <u>Twombly</u>. <u>Iqbal</u> at 129 S.Ct. 1951

5. Plaintiff herein has made these identical allegations against Defendant Nygren. In Paragraphs 30-35 of his First Amended Complaint, Plaintiff alleged that Sheriff Nygren had "policymaking authority" and that "by his inaction and failure to correct the above-described policies, practices, and customs, Keith Nygren tacitly approved them". (Plaintiff's First Amended Complaint Paragraph 35).

6. However, as <u>Iqbal</u> demonstrates, "having knowledge" and "taking no action" can no longer serve as a basis for supervisory liability since vicarious liability is inapplicable to <u>Bivens</u> and Section 1983 suits. Therefore, in order to survive a Motion to Dismiss, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution. <u>Iqbal</u>, at 129 S.Ct. 1948.

7. In <u>Iqbal</u>, the United State's Supreme Court expressly rejected the very pleading and argument set forth by the Plaintiff herein. In <u>Iqbal</u>, as in the case at bar the Plaintiff pled and argued that the government official can be liable due to the supervisors "mere knowledge" or "acquiescence" in their subordinates' conduct. In the United State's Supreme Court's own words, "We reject this argument". <u>Iqbal</u>, at 129 S.Ct. 1949.

8. The United State's Supreme Court rejected this argument because "in a §1983 suit or a <u>Bivens</u> action, where masters do not answer for their servants, the term 'supervisory liability' is a misnomer. Absent vicarious liability, each government official, his or her title notwithstanding, is only liable for his or her own misconduct." <u>Iqbal at 129 S.Ct. 1948.</u>

## **COUNT IV SHOULD BE DISMISSED SINCE THE TORT IMMUNITY ACT CANNOT SERVE AS A BASIS FOR ANY ACTION UNDER ILLINOIS LAW**

1. Plaintiff in Count VI attempts to bring an independent supplemental state law Count against Defendant McHenry County "pursuant to 745 ILCS 10/9-102".

2. This attempt is ill-founded and does not state a claim under Illinois law.

3. 745 ILCS 10/9-102 is Section 9-102 of the Illinois Local Governmental and Employees Tort Immunity Act (745 ILCS 10/1-101 et seq, (hereinafter the "Tort Immunity Act").

4. However, the Tort Immunity Act creates no new actions for plaintiffs, it only grants immunities, hence the name, the "Tort Immunity Act."

5. Section 1-101.1 of the Tort Immunity Act provides as follows:

> (a) The purpose of this Act is to protect local public entities and public employees from liability arising from the operation of government. It grants only immunities and defenses. (b) Any defense or immunity, common law or statutory, available to any private person shall likewise be available to local public entities and public employees.

6. Thus, Plaintiff is attempting to use the Tort Immunity Act intended as a shield for governmental bodies as a sword, and the plain language of the Tort Immunity Act demonstrates that Plaintiff's Count IV fails to state a claim.

9

**WHEREFORE,** Defendants, Neil Pagett, Jason Grochowski, and Scott Loyd, McHenry County and its Sheriff, Keith Nygren, pray that this matter be dismissed with prejudice and for such other relief as this Honorable Court deems fit and just.

                                                Respectfully submitted,

                                                LOUIS A. BIANCHI
                                                McHenry County State's Attorney

                    By:     s/ DONALD B. LEIST
                                                DONALD B. LEIST
                                                Assistant State's Attorney

Louis A. Bianchi
McHenry County State's Attorney
Donald B. Leist; 6198733
McHenry County Assistant State's Attorney
2200 N. Seminary Avenue
Woodstock, IL 60098
(815)334-4159